# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
* * *

| | |
|---|---|
| JAMES EDWARD SCOTT, III,<br><br>Plaintiff,<br><br>v.<br><br>QUIGLEY, *et al.*,<br><br>Defendants. | Case No. 3:23-CV-00264-ART-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 23] |

This case involves a civil rights action filed by Plaintiff James Edward Scott ("Scott") against Defendants Robert Quigley ("Quigley") and Melissa Mitchell ("Mitchell") (collectively "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 23, 25[2].) On February 25, 2025, the Court gave Scott notice of Defendants' motion pursuant to the requirements of *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998). (ECF No. 27.) Scott did not timely file his response, thus the Court *sua sponte* granted Scott an extension of time to file his response. (ECF No. 29.) To date, Scott has failed to file an opposition to the motion. For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 23), be granted.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Scott is a former inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Scott was housed at the Northern Nevada Correctional Center ("NNCC").

Scott alleges the following in his complaint: Scott has end-stage renal disease for which he receives hemo-dialysis treatment. (ECF No. 7 at 4). Scott consults with

---

[1]   This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]   ECF No. 25 consists of Scott's medical records filed under seal in support of Defendants' motion for summary judgment.

Nephrologist Dr. Quigley and Nurse Melissa Mitchell[3] monthly to review texts, labs, and medical complications associated with his medical condition. (*Id.*) From February 2021 through 2023 while Scott was housed in unit 7A or 7B, Dr. Quigley and Mitchell conducted Scott's monthly medical consultations "within earshot of other inmates" instead of using the private medical examination rooms that are in both housing units. (*Id.* at 4–5).

On several occasions, Scott asked Dr. Quigley and Mitchell to use the medical examination rooms when discussing his medical information. (*Id.* at 5). They refused to do so. (*Id.*) Dr. Quigley and Mitchell were aware that other inmates "were in very close proximity" to Scott's cell "yet they both still insisted on" conducting the medical consultations at Scott's cell. (*Id.*) Exposing Scott's medical information subjected him to "harassment, embarrassment, threats, and humiliation from other inmates[,]" and it "created a safety and security risk" for him. (*Id.*)

On March 5, 2024, the District Court screened Scott's complaint pursuant to 28 U.S.C. § 1915A(a) and found that Scott "arguably" stated a colorable Fourteenth Amendment claim about "disclosure of medical information," and allowed the complaint to proceed against Defendants. (ECF No. 6 at 6.)

On February 24, 2025, Defendants moved for summary judgment arguing they are entitled to qualified immunity. (ECF No. 23.)

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material.

---

[3]   Scott refers to Defendant Mitchell as "Michell" in the complaint. (*See* ECF No. 7.) For consistency, the Court will use "Mitchell" throughout this report and recommendation.

*Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Id.* "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary

judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Coomes v. Edmonds Sch. Dist. No. 15*, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita*, 475 U.S. at 586-87.

"[A] motion for summary judgment may not be granted based on a failure to file an opposition to the motion . . . ." *Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2013). Per the advisory committee notes to Rule 56, district courts are prohibited from granting "summary judgment 'by default even if there is a complete failure to respond to the motion.'" *Id.* at 917 (citing Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). "If there is a failure to respond, the Rule 'authorizes the court to consider a fact as undisputed.'" *Id.* (quoting Fed. R. Civ. P. 56 Advisory Committee Notes (2010)). Where the nonmoving party has failed to oppose summary judgment, the Court must still determine if the moving party has met their summary judgement burden. *See id.*

///

4

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## III.   DISCUSSION

Defendants move for summary judgment solely on the basis that they are entitled to qualified immunity. (ECF No. 23.) Specifically, Defendants argue Scott has failed to establish a genuine issue of material fact regarding his medical privacy claim as there was a legitimate penological purpose in providing Scott proper care for his kidney disease and Scott fails to identify any examples of any specific conduct he faced. (*Id.* at 8-11.) Additionally, Defendants argue "there was no clearly established case law that would have placed Defendants on clear notice that they were potentially violating Scott's rights." (*Id.* at 11-13.)

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Or. Dept. of Corrs.*, 751 F.3d 983, 988-89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation" such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official's conduct violated a constitutional right; and (2) whether that right was 'clearly

established' at the time of the violation." *Carley v. Aranas*, 103 F.4th 653, 659 (9th Cir. 2024) (quoting *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019)).

"The two elements do not need to be analyzed in any specific order, and courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citation and internal quotation marks omitted); *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) ("Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages.")

"For a right to be clearly established, it must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* at 661 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton*, 483 U.S. 635, 639-40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).

"[W]hether a constitutional right was violated . . . is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the Court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). The Court will first address whether these rights were "clearly established" at the time of the alleged violation.

Defendants contend that even if the Court finds there is a question of fact as to whether a constitutional violation occurred, based on Scott's allegations, qualified immunity is appropriate because "[t]here is no law, much less clearly established law, in this jurisdiction standing for the proposition that prison officials violated the Fourteenth Amendment by inadvertently disclosing an offender's commonly known, non-transmissible kidney disease by having a medical consultation regarding dialysis care outside his cell door where other offenders might have overheard. (ECF No. 23 at 12.)

"For a right to be clearly established it is not necessary that the very action in question have previously been held unlawful." *Jackson*, 90 F.3d at 332 (citing *Anderson*, 483 U.S. at 640). While it not required that there be a case directly on point before concluding that the law is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Scott's claim is based on an alleged violation of the Fourteenth Amendment, specifically inadvertently disclosure of Scott's commonly known, non-transmissible kidney disease by having a medical consultation regarding dialysis care outside his cell door where other offenders might have overheard. (*See* ECF No. 7.) However, whether a constitutional right to informational privacy even exists, remains unsettled.

In 2010, the Ninth Circuit addressed a claim of violation of the right to privacy in the medical records of a prisoner being evaluated for civil commitment in California under the state's Sexually Violent Predator Act. *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010). The inmate alleged his constitutional right to privacy was violated when psychologists reviewed his medical records and provided their opinions to the district attorney's office recommending that he be civilly committed. *Id.* at 532.

The Ninth Circuit pointed out the general principle of privacy law for prisoners is that "whatever privacy right he has may be overridden for legitimate penological reasons." *Id.* at 534. "'[I]mprisonment carries with it the circumscription or loss of many significant rights.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 524 (1984)). "Loss of privacy is an 'inherent incident[ ] of confinement'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). The court joined other circuits in holding "that prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." *Id.* (citing *Doe v. Delie*, 257 F.3d 309, 311 (3d Cir. 2001); *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999); *Tokar v. Armontrout*, 97 F.3d 1078, 1084 (8th Cir. 1996); *Anderson v. Romero*, 72 F.3d 518, 524 (7th Cir. 1995); *Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994); *Moore v. Mabus*,

976 F.2d 268, 271 (5th Cir. 1992); *Harris v. Thigpen*, 941 F.2d 1495, 1513, 1521 (11th Cir. 1991)). The Ninth Circuit stated that "[p]risons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts." *Id.* at 535.

Here, Scott's medical condition—his end-stage renal disease and the need for hemo-dialysis—was apparently disclosed when Defendants performed consultations for his medical conditions. These consultations did not involve sensitive medical information that would not otherwise be known to other offenders in the unit given the frequency of Scott's transportation to dialysis. Further, Scott presents no evidence of any ulterior motive for disclosing this information. Therefore, this would seem to fall within legitimate penological interests contemplated by *Seaton* so there was no violation of any constitutional right to privacy, to the extent such a right has been recognized at all.

A reasonable person in Defendants' position would not have known their conduct violated the law. As such, these Defendants are entitled to qualified immunity. *See Depenbrock v. Parke*, No. 3:20-cv-00492-ART-CSD, 2023 WL 4078482, at *2 (D. Nev. Jun. 16, 2023) (defendant entitled to qualified immunity as disclosure of inmate's medical condition fell within legitimate penological interests and alleged constitutional right to disclosure of medical condition was not clearly established); *O'Neill v. Bannister*, No. 3:12-cv-00030-LRH-WGC, 2012 WL 6968937, at *9 (D. Nev. Aug. 29, 2012) (defendant entitled to qualified immunity because right to informational privacy in connection with disclosure of medical information was not clearly established); *Wampler v. Carson City Sheriff*, No. 3:11-cv-546-RCJ-VPC, 2012 WL 3205943, at *7 (D. Nev. Aug. 3, 2012) (defendant entitled to qualified immunity because right to informational privacy was not clearly established); *Huling v. City of Los Banos*, 869 F.Supp.2d 1139, 1155 (E.D. Cal. 2012) (police officer entitled to qualified immunity because constitutional informational privacy right was not clearly established); *O'Phelan v. Loy*, No. 09-00236-SOM-KSC, 2011 WL 719053, at *11 (D. Haw. Feb 18, 2011) (defendant entitled to qualified immunity because "the constitutional right of informational privacy is murky, at best).

Accordingly, the Court finds that the law was not clearly established and thus, recommends that Defendants' motion for summary judgment be granted. *See Gordon*, 6 F.4th at 968 (if either prong of qualified immunity analysis is answered "'no,' then the state actor cannot be held liable for damages.")

## IV. CONCLUSION

For the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 23), be granted.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 23), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT** accordingly and **CLOSE** this case.

**DATED**: April 29, 2025

_____
UNITED STATES MAGISTRATE JUDGE